CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
Benard V. Preziosi, Jr. (BP-5715)
Jonathan J. Walsh (JW-2704)
Alexandra G. Maier (AM-0868)
101 Park Avenue
New York, New York 10178
Tel:   (212) 696-6000
Fax:   (212) 697-1559

Attorneys for Plaintiffs
INVISTA B.V. and INVISTA North America S.à r.l.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

INVISTA B.V. AND INVISTA North America S.à r.l.,

           Plaintiffs,

    v.                                                                                           **COMPLAINT**

E.I. DU PONT DE NEMOURS AND COMPANY,                        Civil Action No._____

           Defendant.
-----------------------------------------------------------------X

       Plaintiffs (collectively "INVISTA"), by and through their undersigned counsel, allege for their complaint against defendant E.I. du Pont de Nemours and Company ("DuPont"), as follows:

       1.    In this action, INVISTA seeks specific performance of the terms of a November 16, 2003 Purchase Agreement requiring DuPont to use reasonable commercial efforts to make DuPont personnel available to INVISTA for interviews, fact finding and consultation, and as witnesses in connection with a pending Arbitration between INVISTA North America

S.à r.l. and non-party Rhodianyl (and affiliated entities) (collectively "Rhodia"). To date, despite INVISTA's repeated requests and notwithstanding DuPont's knowledge that INVISTA requires access to certain specifically identified DuPont personnel in connection with (a) its response, due to be filed in early June 2008, to Rhodia's statement of defense in the Arbitration; and (b) the preparation of its case, including witness statements to be filed in September 2008, DuPont has refused to make its personnel available.

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is based upon 28 U.S.C. §1332, as this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the statutory requirement.

3. Venue is proper pursuant to 28 U.S.C. §1391(a) and the agreement at issue between the parties, which provides that venue rests exclusively in New York.

## PARTIES

4. Plaintiff INVISTA B.V. is a business entity organized under the laws of the Netherlands, with its principal place of business in Kansas.

5. Plaintiff INVISTA North America S.à r.l. ("INVISTA North America") is a business entity organized under the laws of Luxembourg, with its principal place of business in Kansas.

6. Each of the plaintiffs is a direct or indirect wholly-owned subsidiary of Koch Industries Inc. ("Koch").

7. Defendant E.I. du Pont de Nemours and Company is a Delaware corporation, with its principal place of business in Delaware.

## BACKGROUND

8. DuPont and two entities owned by Koch, KED Fiber, Ltd. and KED Fiber, L.L.C. (collectively "KED"), entered into a Purchase Agreement dated November 16, 2003 (which, as amended, is referred to herein as the "Purchase Agreement"), pursuant to which DuPont divested itself of its nylon, polyester and spandex operations comprising DuPont's Textiles and Interiors ("DTI") Business. KED's rights and obligations were transferred to and assumed by INVISTA. INVISTA paid approximately $4 million to DuPont in connection with the purchase of the DTI Business.

9. Among other things, in connection with the sale of the DTI Business, DuPont transferred and assigned to INVISTA certain rights and interests in various technology relating to the manufacture of Adiponitrile ("ADN"), a chemical "intermediate" used in the production of nylon polymer.

10. As part of the sale, DuPont assigned to INVISTA North America its rights under a confidentiality agreement whereby DuPont had provided to a French entity named Rhodianyl confidential information related to an advanced technology for manufacturing ADN called Gen 3.

11. The Closing Date for the transactions under the Purchase Agreement was April 30, 2004.

12. The parties to the Purchase Agreement anticipated that each would need the on-going cooperation of the other, including access to employees and information under the other's control, in certain circumstances. This was due to the fact that some of the personnel with knowledge regarding the DTI Business remained DuPont employees following the sale, and other employees with knowledge of the businesses retained by DuPont became INVISTA

employees. Accordingly, under the Purchase Agreement, the parties agreed to cooperate with each other in a number of ways. Among other things, the parties agreed in Section 5.18 of the Purchase Agreement, entitled "Production of Witnesses and Individuals," that after the Closing Date they would have access to the other's employees for interviews, fact finding and consultation, and as witnesses. Section 5.18 of the Purchase Agreement provides in relevant part:

> DuPont and Buyer shall use . . . reasonable commercial efforts to make available to each other, upon written request, its officers, directors, employees and agents for fact finding, consultation and interviews and as witnesses to the extent that any such Person may reasonably be required in connection with any Action in which the requesting party may from time to time be involved relating to the conduct of the DTI Business or the DuPont Business. Access to such Persons shall be granted during normal business hours, at a location and in a manner reasonably calculated to minimize disruption to such Persons and the business of DuPont or Buyer, as the case may be. DuPont and Buyer agree to reimburse each other for reasonable out-of-pocket expenses . . . incurred by the other in connection with providing individuals and witnesses pursuant to this Section 5.18. . . .

13. After the Closing Date, INVISTA North America learned that an affiliate of Rhodianyl S.N.C., Rhodia Polyamide Intermediates S.A.S., had filed several patent applications in the United States and Europe claiming that its employees invented key aspects of the Gen 3 technology and that it owned the inventions. INVISTA North America is now a party to an ad hoc arbitration with Rhodianyl and other Rhodia entities before a tribunal in Geneva (the "Arbitration"). The Arbitration is an "Action," as that term is defined in the Purchase Agreement, relating to the conduct of the DTI Business.

14. In the Arbitration, INVISTA (a) disputes Rhodia's claim that it developed the Gen 3 technology and lawfully obtained patents or filed patent applications relating to the Gen 3 technology; and (b) asserts among other claims, that DuPont employees are the actual

inventors of that technology, that Rhodia's patents were wrongfully obtained in violation of the confidentiality agreement, and that INVISTA is the proper owner of the technology, patents and patent applications at issue.

15. INVISTA filed its statement of claim in the Arbitration on August 29, 2007. Prior to that date, INVISTA conducted preliminary interviews by phone and in person with three DuPont employees who INVISTA asserts invented the technology that is at issue.

16. On November 19, 2007, Rhodia filed its statement of defense in the Arbitration. In its statement of defense, Rhodia, among other things, claimed that its employees or agents invented the technology at issue, and that it lawfully obtained patents with regard to that technology. INVISTA challenges that position and claims that the technology at issue was developed by DuPont and transferred and assigned to INVISTA as a part of the sale.

17. Pursuant to scheduling orders issued by the arbitral tribunal in the Arbitration, INVISTA's time to respond to Rhodia's statement of defense was extended first to early-May 2008 and then to June 6, 2008.

18. Pursuant to Section 5.18 of the Purchase Agreement, by email dated March 21, 2008, INVISTA requested in writing that DuPont make available for fact finding, consultation and interviews and as witnesses the DuPont employees referenced in paragraph 15 above to rebut the assertions by Rhodia in its statement of defense and to assist in establishing that Rhodia's claim that it lawfully obtained the patents relating to that technology at issue is false. INVISTA also advised DuPont that the matter was time sensitive given the schedule established by the arbitral tribunal.

19. Pursuant to the current Arbitration schedule, INVISTA will require access to these individuals in connection with the preparation of its response to Rhodia's statement of

defense, due on June 6, 2008, to prepare and submit witness statements in September 2008 and to prepare and present the inventors as live witnesses at the arbitral hearing in late-November/early-December 2008.

20.     DuPont at first delayed and then refused to make the three employees at issue available to INVISTA in response to INVISTA's March 2008 request, notwithstanding the requirements of Section 5.18 of the Purchase Agreement.

21.     INVISTA will suffer irreparable harm if it does not obtain access to the three DuPont employees in a timely manner. The technology at issue is critical to the DTI Business purchased by INVISTA, including INVISTA's competitive position in the ADN market. INVISTA and Rhodia are competitors in the ADN market. An adverse ruling by the arbitration tribunal with regard to the ownership and control of the use of the technology at issue in the Arbitration would adversely impact INVISTA's competitive position and give Rhodia advantages to which INVISTA does not believe it is entitled, resulting in both short term and long term loss of goodwill, sales and customers essential to the life of the business.

22.     INVISTA has no other recourse because the procedures governing the arbitral proceeding do not provide for an alternative method of discovering the information at issue.

23.     INVISTA has no adequate remedy at law.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

24.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 23 as though fully set forth herein.

25.     The Purchase Agreement is a valid, binding and enforceable agreement.

26. INVISTA has complied with its obligations under the Purchase Agreement.

27. By delaying and then refusing to make its employees available to INVISTA in accordance with the requirements of Section 5.18 of the Purchase Agreement in connection with the dispute between Rhodia and INVISTA, DuPont has materially breached the Purchase Agreement.

28. Pursuant to Section 9.9 of the Purchase Agreement, the parties agreed that "if any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, irreparable damage would occur, no adequate remedy at law would exist and damages would be difficult to determine, and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or equity."

29. As a result of the foregoing, INVISTA is entitled to a judgment of specific performance requiring DuPont (i) to make available in a timely fashion its employees for fact finding, consultation and interviews in connection with INVISTA's response to Rhodia's statement of defense and as witnesses in connection with the preparation of witness statements and at any hearing in the Arbitration; and (ii) to keep confidential all information relating to INVISTA's investigation of the facts, including, without limitation, information relating to INVISTA's requests for interviews, information relating to whom INVISTA did in fact interview and information discussed during, or derived from, the exchange between INVISTA and the DuPont employees.

30. Further, because of the exigencies resulting from the schedule established by the arbitral tribunal, including the June 6, 2008 deadline for INVISTA's response to Rhodia's statement of defense and DuPont's delay and refusal in making its employees available,

INVISTA is entitled to a preliminary injunction requiring DuPont to make the employees available sufficiently in advance of the June 6, 2008 deadline so that INVISTA will have a meaningful opportunity to both interview and consult and use the information developed thereby in its response.

## SECOND CAUSE OF ACTION

## REIMBURSEMENT OF LOSSES

31. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 30 as though fully set forth herein.

32. Pursuant to Section 8.4(a)(i) of the Purchase Agreement, DuPont agreed to indemnify INVISTA from and against any and all "Losses" arising from, in connection with or otherwise with respect to the breach or failure of any of the Sellers, including DuPont, to duly perform or observe any term, provision, covenant or agreement to be performed or observed by the Sellers pursuant to the Purchase Agreement.

33. "Losses" is defined in the Purchase Agreement to include, among other things, "the costs and expenses of attorneys', accountants', consultants' and other professionals' fees and expenses incurred in the investigation . . . or the enforcement of rights hereunder."

34. As result of the foregoing, INVISTA is entitled to a judgment in the amount of its Losses, including professional fees and expenses incurred in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, INVISTA respectfully requests that the Court:

(a) schedule an expedited hearing to consider INVISTA's request for a preliminary injunction;

   (b) issue a preliminary and permanent injunction requiring DuPont (i) to make available in a timely fashion its employees for fact finding, consultation and interviews in connection with INVISTA's response to Rhodia's statement of defense and as witnesses in connection with the preparation of witness statements and at any hearing in the Arbitration; and (ii) to keep confidential all information relating to INVISTA's investigation of the facts, including, without limitation, information relating to INVISTA's requests for interviews, information relating to whom INVISTA did in fact interview and information discussed during, or derived from, the exchange between INVISTA and the DuPont employees;

   (c) issue a judgment of specific performance requiring DuPont (i) to make available in a timely fashion its employees for fact finding, consultation and interviews in connection with INVISTA's response to Rhodia's statement of defense and as witnesses in connection with the preparation of witness statements and at any hearing in the Arbitration; and (ii) to keep confidential all information relating to INVISTA's investigation of the facts, including, without limitation, information relating to INVISTA's requests for interviews, information relating to whom INVISTA did in fact interview and information discussed during, or derived from, the exchange between INVISTA and the DuPont employees; and

   (d) award expenses and costs to INVISTA in connection with this matter.

Dated:  New York, New York
     May 7, 2008

              Respectfully submitted,

              CURTIS, MALLET-PREVOST, COLT &
              MOSLE LLP

            By: _____
              Benard V. Preziosi, Jr. (BP-5715)
              Jonathan J. Walsh (JW-2704)
              Alexandra G. Maier (AM-0868)
              101 Park Avenue, 35th Floor
              New York, New York 10178
              Tel.: (212) 696-6000
              Fax: (212) 697-1559
              Attorneys for Plaintiffs